Keith A. Fink, Bar No. 146841
Sarah E. Hernandez, Bar No. 206305
Jennifer H. Yeung, Bar No. 280819
KEITH A. FINK & ASSOCIATES
11500 West Olympic Boulevard, Suite 316
Los Angeles, California 90064
(310) 268-0780 phone
(310) 268-0790 facsimile

Attorneys for Respondent
Dov Charney

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>    Applicant,<br>v.<br><br>DOV CHARNEY,<br><br>    Respondent. | CASE NO. 2:16-mc-00016 JAK(KKx)<br><br>**OPPOSITION TO APPLICATION FOR ORDER REQUIRING COMPLIANCE WITH AMERICAN APPAREL'S ADMINISTRATIVE SUBPOENA** *DUCES TECUM*<br><br>[Compendium of Authorities Filed Concurrently Herewith]<br><br>[No hearing date scheduled]<br><br>District Judge: John A. Kronstadt<br>Magistrate Judge: Kenly Kiya Kato |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE COUNSEL OF RECORD:

Respondent Dov Charney ("Charney" and/or "Respondent"), pursuant to Federal Rules of Civil Procedure 26(c)(7) and 81(a)(5), respectfully submits this Opposition and related documents to the National Labor Relations Board's ("NLRB" or "the Board")

Application for Order Requiring Compliance with American Apparel's Administrative Subpoena *Duces Tecum* (hereinafter "Application").

## I. INTRODUCTION

This case presents an unusual situation in that the NLRB seeks to have this Court not only enforce an impermissibly invasive subpoena *duces tecum*, but also compel Charney to testify about matters far beyond the realm of permissible inquiry. The NLRB's Application amounts to an abhorrent abuse of a subpoena initially intended to serve as an ordinary request for documents (albeit ones that have no bearing on the underlying election petition).[1] The NLRB has since expanded its scope of inquiry, and now seeks this Court to not only force Charney to testify about the documents referenced in the subpoena but also offer testimony about anything remotely related to American Apparel. As a mere third party to the case, there is simply no justifiable way for Charney to bear this burden.

There are numerous defects – and vast overbreadth – in the NLRB's Application. There also exist several concerns about the Board's investigative subpoena process. Perhaps most importantly, the pivotal problem with this Application is the NLRB's insistence on requiring Charney to provide information that is prejudicial, unduly burdensome, and harassing in nature. Also at issue in this dispute is the NLRB's unwillingness to ensure that Charney's personal and private information will remain confidential.

## II. STATEMENT OF PERTINENT FACTS

On or around November 12, 2015, the General Brotherhood of Workers of American Apparel (the "Union") filed an election petition against American Apparel, Inc. ("American Apparel" and/or the "Charging Party"). On or around November 18, 2015,

---

[1] The NLRB has proffered hand-selected excerpts of hearings as evidence in support of its Application. Only portions of the record were provided to this Court via their Application. The Court does not have the full record of hearings necessary to make a determination as to the necessity or equity of enforcing compliance with American Apparel's administrative subpoena *duces tecum*.

2
OPPOSITION TO APPLICATION FOR ORDER REQUIRING COMPLIANCE WITH
AMERICAN APPAREL'S ADMINISTRATIVE SUBPOENA *DUCES TECUM*

the Charging Party served a subpoena *duces tecum* B-1-P6SO5T on Respondent seeking production of eight (8) sets of documents by November 23, 2015.

On or around November 20, 2015, Respondent petitioned to revoke the subpoena pursuant to 29 C.F.R. § 102.31 on the grounds that neither he nor his counsel were available on the hearing date noticed and that none of the requests relate to any matter under investigation or in question in the proceeding. His petition further alleged that none of the Charging Party's requests were described with sufficient particularity and that each of them was improper for numerous reasons – contentions that Respondent maintains to this day.

During an NLRB hearing on November 30, 2015, Hearing Officer Laura Haddad ("Officer Haddad") declined to enforce the subpoena on the grounds that there was contradictory evidence regarding Charney's involvement in the election activity and that it was "undisputed" that Charney is close friends with several of the individuals whom the Charging Party sought communications from (hence infringing on Charney's privacy). November 30, 2015 Hearing Transcript 450:3-13 (Dkt. Page ID: #39). Officer Haddad acknowledged that the NLRB already had a "huge amount of information on the record" regarding the matter, thereby diminishing the value of the subpoena. November 30, 2015 Hearing Transcript 451:4-7 (Dkt. Page ID: #40). Officer Haddad further declined to enforce the subpoena on the grounds that the "information requested is not necessary for the finder of fact" to reach a decision regarding the underlying matter. November 30, 2015 Hearing Transcript 451:23-25 (Dkt. Page ID: #40). Throughout the hearing, Officer Haddad repeatedly characterized the subpoena as a request for Charney's documents, never once mentioning the necessity for Charney's testimony. *See, e.g.*, November 30, 2015 Hearing Transcript 451:22-23; 452:13-15 (Dkt. Page IDs: #40-1).

On January 11, 2016, at a follow-up hearing on the matter, Officer Haddad stated – in stark contrast to her prior position – that the subpoena was not too broad "given the fact that since June 14 [2014], though Mr. Charney was CEO, he was CEO in name only." January 11, 2016 Hearing Transcript 505:20-23 (Dkt. Page ID: #48). In response to the

concern that many emails between Nativo Lopez and Charney about American Apparel exist yet are not responsive to the subpoena's request, Officer Haddad stated that "the Region does not see a way of limiting [the request] and can't at this time contemplate emails or and communication relating to American Apparel that doesn't somehow indicate whether or not Mr. Charney is improperly involved with the Petitioner under the Board's standards." January 11, 2016 Hearing Transcript 507:12-17 (Dkt. Page ID: #50). Even more surprising was Officer Haddad's sudden mention of requiring Charney's testimony in addition to documents. January 11, 2016 Hearing Transcript 510:18-19 (Dkt. Page ID: #53).

On or around February 4, 2016, the NLRB served Respondent with Notice of Institution of Proceedings to Enforce Administrative Subpoena *Duces Tecum*. The NLRB also issued an Application for Order Requiring Compliance with American Apparel's Administrative Subpoena *Duces Tecum* along with an accompanying Memorandum of Points and Authorities in support thereof. The Application seeks enforcement of the subpoena's document requests and testimony of the same. NLRB's Memorandum in Support of Application at p. 2 (Dkt. Page ID: #71). It further seeks to require Charney to testify about *anything related to American Apparel*, citing the supposedly-special nature of the Board's subpoena-enforcement authority as reason to avoid strict compliance with the requirements of all matters of civil procedure. NLRB's Memorandum in Support of Application at p. 5 (Dkt. Page ID: #74).

Substantively, the Memorandum predicates the Board's authority to enforce the subpoena on the basis that "the subpoena is not overly broad, and the records or testimony sought are relevant to the inquiry." NLRB's Memorandum in Support of Application at p. 6 (Dkt. Page ID: #75). The Memorandum further states in a conclusory manner that the documents and testimony sought are relevant to the Board's ... determination on the merits of the questions at issues in the hearing. NLRB's Memorandum in Support of Application at pp. 7-8 (Dkt. Page IDs: #76-7). Despite flaunting the fact that "Respondent has elected to ignore the subpoena duces tecum" to justify enforcing the subpoena, the Board conveniently declined to address any of the objections to the subpoena's scope

previously raised by Charney. NLRB's Memorandum in Support of Application at p. 8 (Dkt. Page ID: #77). Lastly, the Board neglected to contemplate the enormous infringement that enforcement of the subpoena as-written would have on Charney's privacy.

On February 11, 2016, this Court issued an (in Chambers) order regarding this Application for Order Requiring Compliance with Administrative Subpoena *Duces Tecum* Briefing Schedule. In pertinent part, this Court ordered that Charney's opposition be served and filed within twenty-one (21) days of service. On or about February 16, 2016, Respondent was served with this order. Therefore, Respondent's Opposition is timely.

### III. LEGAL ARGUMENT

A district court's scope of inquiry in an agency subpoena enforcement proceeding first looks: to whether Congress has granted the authority to investigate; to whether procedural requirements have been followed; and to whether the evidence is relevant and material to the investigation. NLRB v. North Bay Plumbing, Inc., 102 F.3d 1005, 1007 (9th Cir. 1996) (citing EEOC v. Children's Hosp. Med. Ctr. of Northern Cal., 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc)). If these conditions are met, then the subpoena may be enforced unless the responding party can prove that the inquiry is unreasonable because it is unduly burdensome or overly broad. Id. at 1008. However, a district court's decision to enforce a subpoena does not preclude that court from limiting the dissemination of subpoenaed materials by use of a protective order. NLRB v. Cable Car Advertisers, Inc., 319 F. Supp.2d 991, 999 (N.D. Cal. 2004) (holding that employer's concerns over proprietary information "may be addressed by requiring production of the documents subject to a protective order"); NLRB v. SEIU, Local 521, 2008 WL 152176, at 1008. *3 (N.D. Cal. Jan 16, 2008) (holding that "to the extent that there are any confidentiality concerns attendant to the disclosure of some information called for by the subpoenas, those concerns may be addressed by production subject to a protective order").

### A. The NLRB Has Not Established That It Met The Necessary Procedural Requirements.

#### 1. The NLRB's regulations do not necessitate physical production of documents and appearance to testify in lieu of other alternatives at the pre-complaint phase.

As conceded by the Board, the subpoena in question is merely an <u>investigative</u> subpoena – that is, a subpoena necessary for gathering evidence to "[d]eciding whether a complaint or compliance specification should issue … or [m]aking appropriate determinations in processing R cases." NLRB Casehandling Manual at § 11770. While use of subpoenas is sometimes necessary in "order to ascertain the facts on which to base an administrative decision on the merits, … [i]nvestigative subpoenas, however, are no substitute for a promptly initiated, dogged, and thorough pursuit of relevant evidence from cooperative sources. Investigative subpoenas should be utilized responsibly." NLRB Casehandling Manual at § 11770.

It appears that the NLRB believes it has the right to require witnesses to testify pursuant to an investigative subpoena, <u>see</u> 29 C.F.R. § 102.31(b) (authorizing the use of subpoenas *ad testificandum*). The Board contends that Respondent failed to comply with its subpoena because he "did not appear at the hearing with the requested documents or to testify." NLRB's Application at p. 4 (Dkt. Page ID: #4). This contention overlooks the fact that issuance of subpoenas *duces tecum* does not *ipso facto* require physical production of documents or presence at a hearing to testify.

In lieu of physical production, "the subpoenaed party may furnish a sworn affidavit setting forth the desired evidence or an admissible summary of that evidence, provided that pertinent records are made available to the Board agent to ensure accuracy." NLRB Casehandling Manual at § 11776. Given the ostensible purpose of an investigative subpoena (*i.e.*, to make a determination as to whether a complaint should issue rather than establishing proof), the possible due process concerns arising from permitting a one-sided discovery process, in-person appearance (*i.e.*, deposition) can be held later if a complaint

does issue.

Thus, should an enforcement order issue, Charney requests the order be limited to compelling production of pertinent records along with a sworn affidavit setting forth the desired evidence or an admissible summary of that evidence.

### 2. The Subpoena is constructed improperly for the purpose of soliciting testimony.

The Board contends that its subpoena *duces tecum* requires Charney to not only produce documents but also to testify to the Board. This flatly contradicts the Board's practices governing the issuance of investigative subpoenas.

"Regions are authorized to issue investigative subpoenas *duces tecum* for the production of documents or other materials from any party or witness and investigative subpoenas *ad testificandum* to compel testimony from witnesses to secure evidence not conveniently available from other sources when foreseeable barriers to enforceability are not present." NLRB Case Handling Manual at § 10508.7.

Pursuant to the Board's own case handling practices, the proper technique to seek testimony is via subpoenas *ad testificandum*. Here, the Board issued only a subpoena *duces tecum* to seek the production of documents and other materials. Had it intended to seek testimony, the Board would have issued a subpoena *ad testificandum* instead – a position that Officer Haddad agreed with on November 30, 2015.

For this reason, should an enforcement order issue, Charney requests that the order be limited to compelling production of documents without testimony.

### 3. The Subpoena is constructed improperly due to its lack of specificity and excessive requests for "all" records.

Each of the eight requests seeks "all" messages, documents, or applications sought between Respondent and other parties. Again, the Board's practices governing the issuance

of investigative subpoenas provide as follows:

> "A subpoena *duces tecum* should seek relevant evidence and should be drafted as narrowly and specifically as is practicable. The use of the word "all" in the description of records should be avoided wherever possible. For example, the phrase "the corporate records showing total purchases" might be substituted for the phrase "all books, records, documents, and other writings that will show total purchases." NLRB Case Handling Manual at § 11776.

This Board improperly constructed this subpoena insofar as its excessive use of the word "all" squarely contradicts the NLRB's procedures for issuing a subpoena *duces tecum* and the documents sought are not described as narrowly and specifically as possible.

The burden lies on the Board, not Charney, to devise an equitable way to limit the requests for emails and communications. The mere fact that the NLRB "cannot contemplate emails or and communication relating to American Apparel that doesn't somehow indicate whether or not Mr. Charney is improperly involved with the Petitioner under the Board's standards" in no way indicates that a more narrow or specific request is impossible to craft. The burden lies with the Board to devise a way to narrowly tailor its subpoenas (particularly in a manner consistent with the Board's own practices). The Board's lack of ability or desire to do so is not a compelling reason to disregard Charney's privacy and require him to submit to an enormously burdensome and harassing task.

For this reason, should an enforcement order issue, Charney requests that the order be narrowly constructed to protect Charney's privacy rights and, at minimum, strike each and every instance of the word "all."

## B. The Subpoena Is Overbroad Because It Ignores the Board's Actual Needs.

Relevancy may be established by the Board "so long as the material requested by the subpoena 'touches a matter under investigation.'" <u>Cable Car Advertisers, Inc.</u>, 319 F. Supp.2d at 998. That said, simply because documents are relevant does not mean that their production is necessary to satisfy the Board's investigatory mission. Again, an investigative subpoena serves the specific purpose of gathering evidence to decide "whether a complaint or compliance specification should issue." NLRB Casehandling Manual at § 11770. Given that the Board has subpoenaed numerous other parties to receive an accurate and representative sampling of the available documents and has declined the opportunity for additional production, it is unlikely that the Board will change its inclination regarding whether a complaint should issue. Indeed, the Board has failed to claim that any additional information is even necessary for it to make a determination whether to issue a complaint. Charney respectfully submits that a subpoena that seeks information beyond what is actually needed is intrinsically overbroad.

## C. Even If Enforced, The Court Should Place Reasonable Limitations On The Dissemination Of The Requested Information.

The key issue here is that the NLRB remains completely unconcerned that the documents it seeks contain sensitive information and confidential details about Charney's personal life because requesting "all" communications or messages between him and the parties listed entails revealing conversations held between him and close friends in confidence with each other. As a third party, it is unduly prejudicial for Charney to be forced to publicly share these communications. It is similarly unduly prejudicial for Charney to be forced to publicly discuss and produce any business license applications he may have filed since January 1, 2015.

Assuming, *arguendo*, that Charney did cause applications for business licenses to be filed on or after January 1, 2015, the Board's subpoena completely disregards the possibility that requesting these applications would force him to reveal sensitive proprietary

information and confidential details about his business affairs – especially when this request is not narrowly tailored to NLRB activity.

While the Board's inflexibility is unfortunate, it can be cured by the Court. Even when enforcement of a NLRB subpoena is appropriate, district courts address the confidentiality concerns of subpoenaed parties via the use of protective orders. Cable Car Advertisers, Inc., 319 F. Supp.2d at 999; SEIU, Local 521, 2008 WL 152176, at *3; see Fed. Rule Civ. Pro. 26(c)(7); see generally 9 James WM. Moore et al., Moore's Federal Practice § 45.04[2][b] (3d ed. 2007) (citing Fed. Rule Civ. Pro. 81(a)(5)) ("Though the federal rules do not alter an agency's subpoena powers, the rules are applicable to actions to enforce an administrative subpoena"), and § 81.05[3] (citing Donaldson v. U.S., 400 U.S. 517, 528 (1971) ("This rule gives the district court a great deal of discretion to fashion rules appropriate to the situation")). Thus, Charney respectfully requests that, if the Court issues an enforcement order, it include a protective element limiting the NLRB from disclosing the requested information to anyone other than its own staff. This limitation, which would be subject to future modification as deemed prudent by the Court, would strike a reasonable balance between the NLRB's investigatory needs and Charney's confidentiality concerns.

As the Charging Party and the Board are well aware, Charney is a party to numerous lawsuits involving American Apparel, including but not limited to the following:

- *Charney v. American Apparel and David Danziger*, Los Angeles Superior Court Case No. BC 585664;
- *Charney v. American Apparel and Colleen Brown*, Los Angeles Superior Court Case No. BC 581602;
- *Charney v. American Apparel, Allan Mayer, David Danziger, Robert Greene, Marvin Igelman, William Mauer, and John Luttrell*, Los Angeles Superior Court Case No. BC 586119;
- *Charney v. Standard General, et al.*, Los Angeles Superior Court Case No. BC 586119; and

- *Charney v. American Apparel, Inc.*, American Arbitration Association Case No. 01-14-0000-7628.

By casting a wide net and seeking to obtain testimony from Charney about *anything* related to American Apparel, the Charging Party is effectively on a fishing expedition with the hopes of acquiring advantageous information not otherwise available to them as those matters are currently stayed pending American Apparel's bankruptcy proceedings in the United States Bankruptcy Court – District of Delaware, Case No. 15-12055.

If this Court blindly orders Charney to comply with the subpoena at issue, it will effectively enable the Charging Party to acquire facts learned in this matter and apply them to other cases. Moreover, as the Board has stated directly, the testimony it seeks to compel is not strictly limited to the subpoenaed documents. By offering the Charging Party *carte blanche* opportunity to ask questions about Charney's involvement with American Apparel, this Court risks enabling them to subversively obtain information pertaining to any litigation.

This is obviously an improper use of an NLRB investigative subpoena. For these reasons as well, this Court should deny the Application in its entirety.

## IV. CONCLUSION

While Charney respects the Board's statutory mandate for the investigation of unfair labor practices and representation matters, this respect does not equate to blind acquiescence. The Board's Application overlooks the distinction between a party's good-faith objections and "contumacious conduct." In this situation, there are legitimate concerns regarding the scope of the Board's authority to compel Charney to testify, the Board's actual need for additional information, and, most importantly, Charney's fundamental desire to protect his personal privacy as a third party and any proprietary information that he may have. Furthermore, the Application improperly seeks to transform what was originally a subpoena for documents into a subpoena for testimony as well and further into a subpoena for testimony that is not limited to the subpoenaed documents.

1 | Accordingly, Charney respectfully requests that the Application be denied in its entirety.

2 | In the alternative, should an enforcement order issue, Charney respectfully requests that the order be limited to compelling production of pertinent records along with a sworn affidavit setting forth the desired evidence or an admissible summary of that evidence; that the order be limited to compelling production of documents without testimony; that the order be narrowly constructed to protect Charney's privacy rights and, at minimum, strike each and every instance of the word "all"; and/or that the order place reasonable limitations on the dissemination of the requested information, including but not limited to, a protective element limiting the NLRB from disclosing the requested information to anyone other than its own staff, limiting the Charging Party's use of any information obtained via the subpoena to this NLRB matter only, and providing that public electronic access not be provided to any documents that may be produced pursuant to the subpoena.

DATED: March 8, 2016

KEITH A. FINK & ASSOCIATES

_____
Keith A. Fink
Sarah E. Hernandez
Jennifer H. Yeung
Attorneys for Respondent
Dov Charney

OPPOSITION TO APPLICATION FOR ORDER REQUIRING COMPLIANCE WITH
AMERICAN APPAREL'S ADMINISTRATIVE SUBPOENA *DUCES TECUM*

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 11500 W. Olympic Boulevard, Suite 316, Los Angeles, California, 90064.

On March 8, 2016, I served the document described as **OPPOSITION TO APPLICATION FOR ORDER REQUIRING COMPLIANCE WITH AMERICAN APPAREL'S ADMINISTRATIVE SUBPOENA *DUCES TECUM*** on all interested parties in their action as follows:

[X]  by placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Margaret W. Serrano | Al Latham, Jr. |
| Stephanie Cahn | Cameron W. Fox |
| William M. Pate | Paul Hastings LLP |
| National Labor Relations Board | 515 S. Flower St., 25th Floor |
| Region 21 | Los Angeles, CA 90071 |
| 888 South Figueroa Street, Ninth Floor | |
| Los Angeles, California 90017 | |

[X]  BY MAIL

  [X]  As follows: I am "readily familiar" with the firm's practice for collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]  (FEDERAL) I declare that I am employed in the office of a member of the bar of the court at whose direction the service was made.

Dated: March 8, 2016

_____
Popaul Kabaidi