PAUL HASTINGS LLP
J. AL LATHAM, JR. (SB# 071605)
CAMERON W. FOX (SB# 218116)
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Relator
AMERICAN APPAREL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, ON RELATION OF AMERICAN APPAREL, INC., | CASE NO.  2:16-mc-00016-JAK(KKx) |
| Applicant, | |
| vs. | **RELATOR AMERICAN APPAREL'S REPLY BRIEF IN SUPPORT OF NLRB'S APPLICATION FOR ORDER REQUIRING COMPLIANCE WITH SUBPOENA** |
| DOV CHARNEY, | |
| Respondent. | |

## I.    INTRODUCTION AND RELEVANT BACKGROUND

This subpoena enforcement action stems from the high-profile saga of American Apparel's former CEO Dov Charney, who was suspended and later terminated for personal and financial misconduct.  Mr. Charney has used every tactic imaginable to claw his way back to the head of the company --- including organizing workers to demand his return as CEO.  In early 2015, Mr. Charney and his personal supporters (including friends, roommates, and members of his former executive team) formed a group that was originally called "Save American Apparel" (using the catch-phrase, "Yo Amo Dov / I ♥ Dov").  The group later began calling itself a "union," and now goes by the name "the General Brotherhood of Workers of American Apparel" ("GBWAA").

In November 2015, the GBWAA filed an election petition with the National Labor Relations Board, Region 21.  American Apparel challenged the petition on the grounds that (1) the GBWAA is not a legitimate labor organization (the statutory term for a union) in that it was created by, and exists for the personal benefit of, Mr. Charney; and (2) Mr. Charney's involvement with the GBWAA has created a fundamental conflict of interest such that the GBWAA could not fairly represent the interests of the workers, even if elected.

In preparation for the hearing on these issues, American Apparel requested and served a Board subpoena on Mr. Charney.  It required him to testify and produce documents.  The first five document requests sought communications between Mr. Charney and five named individuals regarding the GBWAA, its affiliated organizations, or American Apparel.  The timeframe for all five requests was June 14, 2014 (the date Charney was suspended as CEO of the company) to the present.  The sixth and seventh requests sought documents reflecting Charney's financial support of the GBWAA and its affiliated organizations.  The eighth, and

1    final, request sought all applications for business licenses Mr. Charney filed since

2    January 1, 2015.[1]

3        At the hearing, Mr. Charney petitioned the Regional Director to revoke the

4    subpoena on the same grounds he argues here --- relevance, overbreadth, and

5    privacy. *See* NLRB Exhibit No. 5.[2]  The Regional Director considered and rejected

6    all of these arguments, deciding that Mr. Charney's testimony and the documents

7    are necessary for the Regional Director to render a decision in the underlying

8    representation case. *See* NLRB Exhibit No. 9.  Rightly so.  Mr. Charney's

9    involvement in the formation and activities of the GBWAA is the central issue.  It is

10   Mr. Charney's role with the GBWAA that will determine whether the GBWAA is

11   eligible to represent American Apparel employees as their union under the National

12   Labor Relations Act. ***There is no substitute for hearing from Dov Charney and***

13   ***inspecting his records***.

14       It is well-settled that courts give deference to the Board in its decisions

15   regarding subpoena enforcement.  After all, the Regional Director is in the best

16   position to gauge what information is needed to decide whether an election should

17   be held.  The Application should be granted.

18   **II.    ARGUMENT**

19       **A.    The Regional Director's Determination Is Entitled To Deference.**

20       It is well-settled that the scope of judicial review in an agency subpoena

21   enforcement proceeding is limited.  "The critical questions are:  (1) whether Congress

22   has granted the authority to investigate; (2) whether procedural requirements have

23

----

24   [1] These documents were requested because the GBWAA solicited employees to
25   commit that they would take jobs with another Dov Charney company if he does
     not return to American Apparel.

26   [2] All referenced exhibits are attached to the NLRB's Application for Order
27   Requiring Compliance with American Apparel's Administrative Subpoena Duces
28   Tecum, and are referred to as "NLRB Exh. No. ___."

RELATOR AMERICAN APPAREL'S REPLY BRIEF IN SUPPORT OF APPLICATION FOR
ORDER REQUIRING COMPLIANCE WITH SUBPOENA

1   been followed; and (3) whether the evidence is relevant and material to the

2   investigation.  If the agency establishes these factors, the subpoena should be

3   enforced unless the party being investigated proves the inquiry is unreasonable

4   because it is overbroad or unduly burdensome." *NLRB v. North Bay Plumbing, Inc.*,

5   102 F.3d 1005, 1007 (9th Cir. 1996) (internal citations and quotation marks omitted);

6   *NLRB v. International Medication Systems, Ltd.*, 640 F.2d 1110 (9th Cir. 1981);

7   *NLRB v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991 (N.D. Cal. 2004).

8          As the Board has established in its Application and supporting brief, all three

9   factors are met here.  ***First***, the Board has broad authority under Section 11 of the

10   National Labor Relations Act, which includes the power to subpoena any evidence

11   "that relates to any matter under investigation or in question."[3]  29 U.S.C. §161(1);

12   *NLRB v. North Bay Plumbing, supra*; *NLRB v. Interstate Material Corp.*, 930 F.2d 4,

13   6 (7th Cir. 1991) (describing the Board's broad Section 11 powers).  The level of

14   Mr. Charney's involvement with the GBWAA is clearly the central question in the

15   case before the Board, and it needs to be explored for a decision to be rendered.

16          ***Second***, all of the necessary procedures have been followed.  The subpoena

17   was properly issued pursuant to 29 C.F.R. § 102.66(f).  Mr. Charney's petition to

18   revoke was properly considered by the Regional Director.  *See* NLRB Exhibit No. 8

19   (transcript pages 38:7-39:23), NLRB Exhibit No. 9 (fn. 1); NLRB Exhibit No. 10

20   (transcript pages 47:2-57:4); NLRB Exhibit No. 11 (transcript pages 61:11-63:10).

21

22

---

23   [3] In determining an agency's authority, the district court's role is "strictly limited," as

24   "judicial review of early phases of an administrative inquiry results in interference
     with the proper functioning of the agency and delays resolution of the ultimate

25   question [of] whether the Act was violated." *EEOC v. Federal Exp. Corp.*, 558 F.3d

26   842, 848 (9th Cir. 2009) (internal quotation marks omitted).  As long as there is some
     "plausible ground for jurisdiction, or, to phrase it another way, unless jurisdiction is

27   plainly lacking, the court should enforce the subpoena." *Id.* (internal quotation marks

28   omitted).

RELATOR AMERICAN APPAREL'S REPLY BRIEF IN SUPPORT OF APPLICATION FOR
ORDER REQUIRING COMPLIANCE WITH SUBPOENA

1    And the Board has properly applied to enforce the subpoena pursuant to 29 C.F.R.

2    § 102.31(d).

3        To prove that the Board has *not* met the procedural requirements for

4    enforcing subpoenas, the challenging party must show that the Board has failed to

5    follow its general procedures for the issuance of subpoenas and petitions to revoke

6    as outlined in 29 C.F.R. § 102.31.  *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d

7    1005, 1008 (9th Cir. 1996); *NLRB v. Vista Del Sol Health Servs., Inc.*, 40 F. Supp.

8    3d 1238, 1257-58 (C.D. Cal. 2014).  Mr. Charney does not make any such showing,

9    or even refer to 29 C.F.R. § 102.31.  Instead, he argues (under the guise of

10   "procedure") that he should not be required to testify at the hearing because (a) a

11   sworn affidavit from him should suffice, and (b) subpoenas *duces tecum* apply only

12   to documents (not testimony).  Charney Opposition at pp. 6-7.  He also argues that

13   the subpoena is improper because the document requests include the word "all."

14   Charney Opposition at pp. 7-8.  Of course, these arguments have nothing to do with

15   whether the Board followed the applicable procedural requirements.

16       These arguments also fail because they are wrong.  The Board is certainly not

17   required to accept a sworn affidavit in lieu of live testimony with cross-

18   examination.  To the contrary, the Act specifically provides:

19           For the purpose of all hearings and investigations, which,
20           in the opinion of the Board, are necessary and proper for
             the exercise of the powers vested in it . . . [t]he Board
21           shall issue . . . subp[o]enas requiring the ***attendance and***
22           ***testimony*** of witnesses or the production of any evidence
             in such proceedings or investigation requested in such
23           application.

24

25   29 U.S.C. § 161(1).

26       As for Mr. Charney's insistence that subpoenas *duces tecum* are inherently

27   limited to the production of documents and do not compel testimony, that is absurd.

28   On its face, the subpoena directs Mr. Charney "to appear before a Hearing Officer

-4-

RELATOR AMERICAN APPAREL'S REPLY BRIEF IN SUPPORT OF APPLICATION FOR
ORDER REQUIRING COMPLIANCE WITH SUBPOENA

1   of the National Labor Relations Board . . . *to testify* in [Case No.] 21-RC-

2   164096[.]"  NLRB Exhibit No. 4 (p.1).  And while Mr. Charney argues that the

3   NLRB Case Handling Manual's discussion of subpoenas supports his theory, it

4   does not.  The Manual says nothing about a subpoena *duces tecum* commanding

5   documents only, or that a separate subpoena *ad testificandum* must also be served to

6   secure live testimony in addition to documents.  Indeed, that would be a ridiculous

7   requirement --- it would force parties to prepare and serve redundant subpoenas,

8   and pay witness fees twice to ensure the enforceability of both subpoenas.

9        Furthermore, Mr. Charney's claim that subpoenas cannot be enforced if they

10   use the word "all" is baseless.  He cites no authority, instead relying on the NLRB

11   Case Handling Manual, which simply gives guidance to NLRB staff in drafting

12   their own subpoenas.[4]  Of course it can be appropriate to request "all" documents of

13   a certain type or from a certain time period, and the Regional Director found it to be

14   appropriate here.  Were the word "all" to be deleted, Mr. Charney could easily

15   cherry-pick what he would provide, concealing any damaging documents.

16        **Third,** the evidence is relevant and material to the case before the Board, and

17   Mr. Charney does not show otherwise.  The document requests specifically target

18   communications that are likely to provide important information about

19   Mr. Charney's involvement with the GBWAA, and information about the new Dov

20   Charney businesses that the GBWAA says will hire workers away from American

21   Apparel.  The Regional Director has determined that this information is needed to

22   render a decision in this case, and courts largely defer to those decisions.  *See NLRB*

23   *v. American Medical Response, Inc.*, 438 F.3d 188, 193 (2d Cir. 2006) (a "district

24   court defers to 'the agency's appraisal of relevancy, which must be accepted so long

25   as it is not obviously wrong") (internal citations omitted).

26

27   [4] The NLRB's Case Handling Manual is an internal guide for NLRB staff, not a
28   rule or regulation.

-5-

**B.   Mr. Charney Cannot Show That The Subpoena Is Overly Broad And Does Not Argue It Is Unduly Burdensome.**

Mr. Charney claims that "the subpoena is overbroad because it ignores the Board's actual needs," but provides no explanation. Charney Opposition at 9.  He observes that other parties received subpoenas too, suggesting that the Board should try to force his friends and supporters to produce records in response to **_their_** subpoenas, before requiring him to do so.  But there is no rule requiring the Board to do so, particularly where the Regional Director has already determined that hearing directly from Mr. Charney is critical to the case.

**C.   Mr. Charney's Privacy Claim Is Specious.**

Mr. Charney is certainly not entitled to keep his involvement with GBWAA, its "officers," and its related entities, confidential.  Where, as here, an individual is suspected of creating a "union" for his own personal gain, the Board has not hesitated to probe into the details of the relationship, including the financial details. In *Marina Associates, d/b/a Harrah's Marina Hotel and Casino*, 267 NLRB 1007 (1983), the full Board unanimously upheld the Regional Director's finding that the petitioner and its parent "federation" were not labor organizations within the meaning of the NLRA.  The employer subpoenaed documents "such as financial reports and statements, minutes of meetings, records showing . . . [union officers' and employees'] salaries and expense reimbursements, loan documents and rental agreements."  The Board, adopting the Regional Director's decision, held these documents to be "unquestionably relevant in this case to the issue of whether the Petitioner and the Federation are labor organizations within the meaning of Section 2(5) of the Act."  The failure to produce the subpoenaed documents during the hearing "clearly shows the Petitioner's unwillingness to cooperate in the investigation of its petition and its withholding of necessary evidence in its possession."  267 NLRB at 1012.  *See also Douglas Oil Co.*, 197 NLRB 308, 311 (1972) (union's certification revoked; the union's refusal to honor subpoena for

RELATOR AMERICAN APPAREL'S REPLY BRIEF IN SUPPORT OF APPLICATION FOR
ORDER REQUIRING COMPLIANCE WITH SUBPOENA

1   checks drawn on its checking account contributed to the Board's conclusion that it

2   "is in reality something other than a collective-bargaining representative.")

3        Mr. Charney's claim that his business applications are private fails too.

4   These are documents that have already been provided to the State of California.  He

5   has no basis for withholding them here.

6        Finally, Mr. Charney's request that this Court limit disclosure of the

7   subpoenaed documents to the NLRB's own staff is absurd.  Such an order would

8   foreclose American Apparel, as the party seeking Mr. Charney's documents and

9   testimony, from litigating the case.  Mr. Charney has made no specific showing of

10   legitimate privacy concerns.  Should there arise a specific issue with any document

11   or testimony, the NLRB's hearing officer has plenary authority to address it (for

12   example, by ordering redactions before a document is admitted into evidence).

13       **D.**    **Merely Because Mr. Charney's Personal Lawsuits Against American Apparel Are Stayed Does Not Prevent the Board From Enforcing Its Lawful Subpoena.**

14

15

16        Finally, Mr. Charney argues that the Court should deny the Board enforcement

17   of its own subpoena (or at least limit what information the Board receives) because

18   Mr. Charney's *personal* lawsuits against American Apparel are stayed (as a result of

19   American Apparel's bankruptcy filing last year).  Charney Opposition at pp. 10-11.

20   Mr. Charney cites zero authority for this, and it makes no sense anyway.  The

21   representation case filed by the GBWAA is pending, and the Board and American

22   Apparel are entitled to obtain the necessary information to litigate and decide the case

23   now.  The status of Mr. Charney's lawsuits is irrelevant.

24

25

26

27

28

-7-

RELATOR AMERICAN APPAREL'S REPLY BRIEF IN SUPPORT OF APPLICATION FOR ORDER REQUIRING COMPLIANCE WITH SUBPOENA

III.   **CONCLUSION**

   For all of the reasons described above, Relator American Apparel respectfully requests that the Board's Application be granted.

DATED:  March 15, 2016          PAUL HASTINGS LLP
                                J. AL LATHAM, JR.
                                CAMERON W. FOX

                                By:_____
                                            J. AL LATHAM, JR.

                                Attorneys for Relator
                                AMERICAN APPAREL, INC.

RELATOR AMERICAN APPAREL'S REPLY BRIEF IN SUPPORT OF APPLICATION FOR
ORDER REQUIRING COMPLIANCE WITH SUBPOENA